**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KIM V. M.,**

                    **Plaintiff,**                  3:21-cv-140 (GLS)

        v.

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Coughlin, Gerhart Law Firm<br>P.O. Box 2039<br>99 Corporate Drive<br>Binghamton, NY 13902-2039 | SCOT G. MILLER, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. CARLA B. FREEDMAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Anatoly Shnaider<br>Regional Chief Counsel<br>Office of Regional Counsel, Region II<br>625 JFK Building<br>15 New Sudbury Street<br>Boston, MA 02203 | NATASHA OELTJEN<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe
Senior District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. **Introduction**

Plaintiff Kim V. M. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)[1]  After reviewing the administrative record and carefully considering Kim's arguments, the Commissioner's decision is affirmed and the complaint is dismissed.

### II. **Background**

Kim applied for DIB and SSI benefits on March 29, 2019, alleging a disability beginning January 10, 2008, which was later amended to March 29, 2019.  (Tr.[2] at 125, 126, 234-47, 343.)  After her applications were denied, (Tr. at 159-68), she requested reconsideration, (Tr. at 169-70), which was also denied, (Tr. at 171-82).  She then requested a hearing

---

[1] In her complaint, Kim appeals only the denial of her "claim for SSI benefits," however, in her motion for judgment on the pleading, she states that she is "seek[ing] review of . . .den[ial of her] application for [DIB] and SSI disability benefits."  (Dkt. No. 11 at 1.)  In the interest of justice, the court will review the denial of both Kim's DIB and SSI benefits.

[2] Page references preceded by "Tr." are to the consecutively-paginated administrative transcript.  (Dkt. No. 10.)

before an Administrative Law Judge (ALJ), (Tr. at 183-85), which was held on March 6, 2020, (Tr. at 66-97).  On April 3, 2020, the ALJ issued an unfavorable decision denying the requested benefits, (Tr. at 11-32), which became the Commissioner's final determination upon the Appeals Council's denial of review, (Tr. at 1-7).

Kim commenced the present action on February 7, 2021, by filing her complaint, wherein she seeks review of the Commissioner's determination. (Compl.)  Thereafter, the Commissioner filed a certified copy of the administrative transcript.  (Dkt. No. 10.)  Each party filed a brief seeking judgment on the pleadings.  (Dkt. Nos. 11, 15.)

### III. **Contentions**

Kim argues that the Commissioner's decision was legally erroneous and not supported by substantial evidence[3] because: (1) the ALJ and the Appeals Council failed to properly develop the record; and (2) "the ALJs decision is not supported by substantial evidence" because he "failed to properly evaluate the medical evidence in the record."  (Dkt. No. 11 at 1,

---

[3] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

15-24.) The Commissioner contends that: (1) while the ALJ may have erred in not developing the record, any error was harmless; and (2) that substantial evidence supports the ALJ's determination. (Dkt. No. 15 at 5-20.)

## IV. Facts

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 16-27; Dkt. No. 11 at 2-15; Dkt. No. 15 at 1-2, 4-5.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[4] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the

---

[4] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Accordingly, although the regulatory sections cited herein are sections of Title II, the substance is found in both Title II and Title XVI.

court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  The ALJ's Development of the Record

Kim argues that the ALJ failed to develop the record because the ALJ "did not receive and consider the relevant evidence from . . . [Kim's] treating physician," before issuing his decision, despite Kim's request for additional time to acquire and submit this evidence.  (Dkt. No. 11 at 16.)  Further, Kim asserts that the Appeals Council "compounded the error" by finding that "the evidence did not show a reasonable probability that it would change the outcome of the decision."  (*Id.* at 17.)  The Commissioner maintains that the ALJ's decision to rule without the evidence at issue—treatment notes from five appointments with Kim's primary care provider, Dr. Kristina Hummer, ranging from July 2019 to July 2020, (Tr. at 33-65)—may have been "improper," but that any error was harmless.  (Dkt. No. 15 at 6.)  Specifically, the error, if any, was harmless because the evidence at issue was "merely cumulative" of other evidence in the record.  (*Id.* at 8.)

It is "well-established" that the ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).  To this end, "no later than [five] business days before the date of the scheduled hearing" a claimant "must inform [the ALJ] about or submit any written evidence."  20 C.F.R. § 404.935(a).  If a claimant fails to comply with this requirement, the ALJ may decline to consider the evidence, unless the exceptions outlined by 20 C.F.R. § 404.935(b) apply. An ALJ's error under 20 C.F.R. § 404.935(a)-(b) does not justify remand where the error is harmless.  *See Yacos v. Comm'r of Soc. Sec.*, No. 18-cv-1271, 2019 WL 6490842, at *5 (W.D.N.Y. Dec. 3, 2019) (analyzing error under 20 C.F.R. § 416.1435, which parallels 20 C.F.R. § 404.935) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)); *see also Sears v. Astrue*, No. 11-cv-138, 2012 WL 1758843, at *9 (D. Vt. May 15, 2012) (finding that a plaintiff arguing "that the ALJ erred in failing to fully develop the record" must show how the excluded "records would have affected the outcome of the proceedings").  Additionally, "[w]hen the Appeals Council denies review after considering new evidence, [a court must] simply review the entire administrative record, which includes the new evidence, and determine . .

6

.whether there is substantial evidence to support the decision." *Perez v. Charter*, 77 F.3d 41, 46 (2d Cir. 1996).

Because the Commissioner concedes that "the ALJ should have considered whether any exceptions [under 20 C.F.R. § 404.935(b)] . . . applied, . . . before issuing a decision," (Dkt. No. 15 at 6), the court must determine whether this error was harmless. The excluded records were treatment notes from Dr. Hummer that were strikingly similar to Dr. Hummer's treatment notes already before the ALJ. (*Compare* Tr. at 33-64 (Dr. Hummer's excluded notes documenting that Kim suffered from "chronic back pain" and sciatica, had "no focal motor or sensory deficits," listed Kim's "functional status" as "no impairment," and that she was undertaking "moderate activity" including walking), *with* Tr. at 505-26 (Dr. Hummer's notes before the ALJ which noted the same).) Although in some of the excluded treatment notes Kim complained of "worsening back pain," Dr. Hummer consistently noted her "functional status" as "not changed" and "no impairment," (Tr. at 60, 63; *see* Tr. at 46, 49), and the excluded notes reiterated these opinions for every visit, (Tr. at 36, 43, 49, 57, 63). Accordingly, any error by the ALJ with respect to the excluded treatment notes was harmless. *See Hamilton v. Comm'r Soc. Sec.*, No. 18-CV-1509,

2020 WL 4283895, at *5 (concluding that, where "there [wa]s simply nothing in the proposed new records that the ALJ would not have seen or considered from the prior records . . . that the proposed new records are cumulative and unlikely to change the Commissioner's final determination")

## B.     The ALJ's Decision

Kim argues that the ALJ's determination that Dr. Hummer's findings were "not persuasive" was not supported by substantial evidence, and constituted error because the ALJ failed to consider the excluded treatment notes and "failed to evaluate [Dr. Hummer's] medical opinion applying the criteria of consistency and supportability."  (Dkt. No. 11 at 20-22, 24.)  She further contends that the ALJ's finding that Dr. Gilbert Jenouri's opinion was "persuasive" constituted error because he "reviewed no records and gave an impermissibly vague medical source statement recommendation."[5]  (*Id.* at 23.)  Finally, Kim maintains that it was error to find "persuasive the uninformed opinions of" the state agency medical consultants because they

---

[5]  Kim also contends that "the ALJ apparently translated [the] moderate limitations [suggested in Dr. Jenouri's medical opinion] into the ability to perform the full range of light work."  (Dkt. No. 11 at 23.)  However, this misstates the record as the ALJ's residual functional capacity determination accounts for exertional and postural limitations, (Tr. at 19), consistent with Dr. Jenouri's recommendation, (Tr. at 544).

8

"never examined [Kim,] . . . reviewed only a portion of the relevant medical records," which did not include Dr. Hummer's excluded treatment notes, and "failed to take note of the[ir] specialization[s]."[6] (Dkt. No. 11 at 23-24.)

An "ALJ must articulate in his . . . determination how persuasive he . . . finds all of the medical opinions." *Daniel E. v. Kijakazi*, No. 6:20-CV-1270, 2022 WL 602533, at *4 (N.D.N.Y. Mar. 1, 2022) (citing 20 C.F.R. § 416.920c). In fulfilling his duty, an ALJ will consider the following factors: (1) "supportability"; (2) "consistency"; (3) "relationship with the claimant," which includes the "length of the treatment relationship," the "frequency of examinations," the "purpose" and "extent of the treatment relationship," and the "examining relationship"; (4) "specialization"; and (5) any "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). The ALJ must "explain how [he] considered the supportability and consistency factors" in his decision and "may, but [is] not required to, explain how [he] considered the [additional] factors." 20 C.F.R. § 404.1520c(b)(2).

---

[6] Kim also questions the ALJ's basis for noting that the State Agency Medical Consultants are familiar with the SSA rules and regulations. (Dkt. No. 11 at 23.) However, the basis for this statement comes directly from the regulations. *See* 20 C.F.R. § 416.913a(b)(1) ("[O]ur . . . State [A]gency [M]edical . . . [C]onsultants are highly qualified and experts in Social Security disability evaluation.").

While Kim contends that the ALJ failed to address the supportability and consistency of Dr. Hummer's opinion, she is mistaken because the ALJ's decision noted both how Dr. Hummer's opinion was inconsistent with her own treatment notes and that the limitations that she suggested were "not well supported by the medical evidence." (Tr. at 24.)

Kim's argument that the ALJ "never discussed the overwhelming amount of evidence in this record demonstrating the severity of the [Kim]'s impairment[ that] corroborat[ed] the findings of Dr. Hummer," (Dkt. No. 11 at 20), is equally unpersuasive. The "overwhelming" evidence Kim points to is an examination by Dr. Adesh Tandon that "assessed [Kim as having] chronic axial low back pain with intermittent radiation into the right lower extremity along with multilevel spondylosis with degenerative disc disease," (*id.* at 21 (citing Tr. at 503)), an examination by Dr. Matthew Bennett who noted Kim had "pain in the lower back radiating to both legs but worse in the right leg," (*id.* (citing Tr. at 531)), notes from her physical therapist , (*id.* (citing Tr. at 561-62, 575, 577, 583, 587, 590)), the consultative examination by Dr. Jenouri, (*id.* (citing Tr. at 542-43)), and Dr. Hummer's own treatment notes, (*id.* (citing Tr. at 510, 520, 524)), all pieces of evidence that were specifically cited or discussed in the ALJ's decision. (Tr. at 18 (acknowledging Kim's "chronic low back pain and left sided

10

sciatica, as well as, her lumbar spondylosis"); Tr. at 21 (citing Kim's physical therapist's notes and discussing her progress in physical therapy (citing Tr. at 632-34)); Tr. at 23 (citing and discussing the consultative examination by Dr. Jenouri (citing Tr. at 541-546)); Tr. at 24 (citing and discussing Dr. Hummer's treatment notes (citing Tr. at 541-546)).) Contrary to Kim's assertion, the ALJ cited and discussed the "overwhelming" evidence allegedly "corroborating the findings of Dr. Hummer," (Dkt. No. 11 at 20-21), but, because Dr. Hummer's opinion was inconsistent with her own notes and was "not well supported by the [remaining] medical evidence," found it "not persuasive," (Tr. at 24). Accordingly, the ALJ's determination with respect to Dr. Hummer is free from legal error and supported by substantial evidence.[7]

Kim's contention that it was error to find Dr. Jenouri's opinion "persuasive" because he "reviewed no records and gave an impermissibly vague medical source statement recommendation," (Dkt. No. 11 at 22, 24), is without merit. First, the fact that Dr. Jenouri did not review Kim's medical records does not, itself, negate the value of his opinion. *See Benitez v.*

---

[7] To the extent Kim argues that it was an error to determine that Dr. Hummer's findings were "not persuasive" because the ALJ failed to consider the excluded treatment notes, (Dkt. No. 11 at 22), this argument is without merit for the reasons already mentioned. *See supra* Part VI.A.

11

*Comm'r of Soc. Sec.*, 2021 WL 4239244, at *16 (S.D.N.Y. Sept. 17, 2021) (finding that "the opinion of a consultative examiner who did not review the claimant's medical records may" be relied on by an ALJ (citation omitted)); *see also Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) ("The greater weight accorded by the ALJ to the opinion of the consultative [examiner was appropriate where it wa]s also consistent with the record at large and the applicable regulations."). Second, Dr. Jenouri's opinion was not "impermissibly vague," because it used the terms "moderate" and "mild," as Kim asserts, (Dkt. No. 11 at 22). *See Nesevitch v. Colvin*, No. 3:15-cv-935, 2016 WL 5717270, at *16 (N.D.N.Y. Sept. 30, 2016) (finding that the "use of phrases such as 'moderate' or 'mild' does not render a doctor's opinion vague or non-substantial for purposes of an ALJ's RFC determination").

Additionally, the ALJ's determination with respect to Dr. Jenouri's medical source statement is supported by substantial evidence. Dr. Jenouri's statement opined that Kim had "moderate restriction walking and standing for long periods, bending, stair climbing, lifting, and carrying." (Tr. at 544.) This conclusion is supported by Dr. Jenouri's examination notes, which stated that Kim cooked, cleaned, and did laundry multiple times a week, "appeared to be in no acute distress," had a normal gait, could stand

normally, "[n]eeded no help changing for the exam or getting on and off the exam table[, was a]ble to rise from [a] chair without difficulty," had no sensory deficit, had full strength in all extremities, and that her prognosis was considered "stable." (Tr. at 541-44.) Dr. Jenouri's medical source statement is also supported by other medical evidence in the record, as noted by the ALJ. (Tr. at 578, 580 (Dr. Hummer's treatment notes stating that Kim had a "moderate activity level," that her exercise including walking, and had "no focal motor or sensory deficits").) Accordingly, the ALJ's determination regarding the medical opinion of Dr. Jenouri is free from legal error and is supported by substantial evidence.

Kim's argument that it was error to find "persuasive the uninformed opinions of" the state agency medical consultants because they "never examined [Kim,] . . . reviewed only a portion of the relevant medical records," which did not include Dr. Hummer's excluded treatment notes, and "failed to take note of the[ir] specialization[s]," (Dkt. No. 11 at 24), is unpersuasive. The fact that the consultants never examined Kim, and the fact that the ALJ did not note their specializations does not constitute error, as an ALJ is *not* required to mention these factors in his opinion. *See* 20 C.F.R. § 416.920c(b)(2), (c)(3)-(4) (explaining that an ALJ "may, but [is] not required to, explain how [h]e considered" the medical providers

13

"[r]elationship with the claimant" and "[s]pecialization"). Additionally, the ALJ's determination with respect to the state agency medical consultants' medical opinions is supported by substantial evidence because, as the ALJ noted, (Tr. at 23-24), their findings were "consistent with the record." (Tr. at 590-91, 593.) Finally, the medical records that Kim contends the state agency medical consultants failed to review were Dr. Hummer's excluded treatment notes, (Dkt. No. 11 at 23-24), an argument that has already been rejected, *see supra* Part VI.A. Accordingly, the ALJ's determination with respect to the state agency medical consultants' medical opinions is free from legal error and is supported by substantial evidence.

## C.     Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and free from legal error.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is

further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 14, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge